**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**

JOY HURT, on behalf of herself and
all others similarly situated,

        Plaintiff,

    v.

SHELL OIL COMPANY (d/b/a SHELL
CHEMICAL COMPANY) and CELANESE
CORPORATION,

        Defendants.

CASE NO. 3:17-cv-00315-DPM

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' JOINT MOTION TO DISMISS**

Plaintiff Joy Hurt, on behalf of herself and others similarly situated, by and through undersigned counsel, respectfully submits this Memorandum of Law in Opposition to Defendants' Joint Motion to Dismiss [Doc. 35] and Defendants' Memorandum of Law in support thereof ("MOL") [Doc. 36].  For the reasons set forth below, the Defendants' Motion to Dismiss should be denied.

**INTRODUCTION**

Plaintiff's intentions, as evidenced by the Multi-State Class definition and the Arkansas Subclass definition found in the complaint, are to bring justice to those who were not *Eligible Claimants,* as that term was defined in the Cox v. Shell Oil Co. settlement agreement.  See Class Action Complaint ("Compl.") [Doc. 1] at ¶¶ 18-20 & Exhibit B (citing/excerpting Settlement Agreement §6.1, Cox v. Shell Oil Co., No. 18,844 (Tenn. Ch. Ct. Obion Cnty. July 31, 1995)).  Eligible Claimants were defined therein as homeowners who suffered leaks in a polybutylene plumbing system (hereinafter referred to as "PB Piping System") prior to 2009.  See id.

Plaintiff's proposed Multi-State Class is comprised of all persons and entities that presently own structures and/or improvements to real property in various states in which there is a PB Piping System, as well as all persons and entities that own or previously owned such structures and/or improvements, and incurred any cost or expense by reason of leakage from a failure, repair, or removal of all or any portion of a PB Piping System after 2009.  Compl. ¶ 21.  The proposed Arkansas Subclass is comprised of all persons and entities that presently own structures and/or improvements to real property in the State of Arkansas in which there is a PB Piping System and all persons or entities that own or previously owned such structures and/or improvements and incurred any cost or expense by reason of leakage from a failure, repair, or removal of all or any portion of a PB Piping System after 2009.  Id. ¶ 22.  Both proposed classes specifically exclude all persons and entities that were *Eligible Claimants* with respect to the *Cox* settlement. Id. ¶¶ 21-22.

Whether Plaintiff's claims indeed fell within the scope of, and are precluded by, the original settlement is far from clear, and, regardless, she received **absolutely no consideration** in exchange for what legal rights she might have relinquished.  And even if Plaintiff did fall within the scope of the original class definition, Plaintiff's interests were wholly unrepresented in the original action, and barring Plaintiff's claims would amount to a denial of due process.  The Defendants' facile arguments to the contrary set forth a roadmap to dismissal that is appealingly easy but falls well short of a proper legal analysis.  Plaintiff has suffered real damages and should be permitted to seek justice from the Defendants.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a court to dismiss a claim on the basis of a dispositive issue of law.  Neitzke v. Williams, 490 U.S. 319, 326 (1989).  If, as a

matter of law, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," a claim should be dismissed.  Id. at 327 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also O'Neal v. State Farm Fire & Cas. Co., 630 F.3d 1075, 1077 (8th Cir. 2011).

When considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party.  Erickson v. Pardus, 551 U.S. 89, 94 (2007); Young v. City of St. Charles, Mo., 244 F.3d 623, 627 (8th Cir. 2001).  The court is to read a complaint as a whole and not piece-meal to determine whether each allegation, in isolation, is plausible.  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).  In addition to the complaint, the court may consider matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint.  See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

## ARGUMENT

### I.   PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE COX SETTLEMENT

Because Plaintiff was not an "Eligible Claimant" entitled to relief under the original polybutylene settlement, that settlement did not extinguish Plaintiff's right to bring this action. Furthermore, Plaintiff received no consideration for giving up this valuable right as required by the law of contracts. Finally, Plaintiff was inadequately represented in the original action (hereinafter referred to as Cox), and barring her claims would violate her right to due process under the Fourteenth Amendment.

### A.  Hurt Was Not a Member of the Cox Settlement Class

The preclusive scope of the Cox settlement is far from clear.  What few indications exist suggest that the settlement's preclusive scope was *not* intended to encompass Plaintiff.  In light of this ambiguity, combined with the serious due process problem outlined in the subsequent section, the Court should decline to dismiss this action.

It is not disputed that the Cox settlement, pursuant to the preliminary approval order, expressly *excluded* those who did not experience a "Qualifying Leak" within the specified time periods.  See Compl. ¶¶ 19-20; MOL at 13.  As Defendants point out, the settlement class was defined differently in the final approval order, but the definition there is far more ambiguous.  As a homeowner's "entitlement to relief under the settlement agreement" is necessarily an individualized inquiry, the *term* of such entitlement might reasonably be construed as referring to the individual and not the entire settlement program.  In other words, the third prong of the final order class definition encompasses homeowners whose entitlement to relief *has vested* by virtue of a qualifying leak during the specified time periods.

This interpretation is supported by various other settlement materials.  For example, the notice provision cited by Defendants (i.e., "If you do NOT want to remain a Class Member and participate in the benefits of the Settlement," *see* MOL p.8) clearly indicates that class membership entails a *present right to compensation* under the settlement.  Given these considerations, it is very plausible that the Cox court may *not* have intended to substantively expand the class scope between the preliminary and final orders.

The few outside indications that exist likewise suggest the various definitions were intended to be synonymous.  Defendants do not cite nor can Plaintiff find any indication the court in Cox intended to expand the settlement's preclusive scope between the preliminary and final

4

approval orders.  Purposefully expanding the settlement class to encompass those *not* eligible for compensation would have substantial due process ramifications warranting some mention in the final approval order.  Yet this is never addressed.  In fact, with respect to the "revised terms of the Settlement," the court states simply that "*none of the changes has an adverse impact on any Class member.*"  Cox, 1995 WL 775363, at *11 (Tenn. Ch. Nov. 17, 1995).[1]  Accordingly, there are ample grounds to conclude that Plaintiff was never part of the Cox settlement class. At the very least, the settlement's preclusive scope is ambiguous and must be construed narrowly, with all doubts resolved against its drafters.

**B.  Hurt Received No Consideration for Relinquishing Her Right of Action**

A settlement agreement is basically a contract and governed by contract principles. Berardinelli v. Gen'l American Life Ins. Co., 57 Fed. R. Serv. 3d 844 (8th Cir. 2004).  Of course, this also applies to the specific settlement arrived at in Cox.  It is basic hornbook law that contracts require consideration on the part of both parties.  Without consideration there is no contract.  Gulf Laboratories, Inc. v. Diagnostic Technology, Inc., 695 F. Supp. 1151 (D. Utah 1988); Butera v. Crane, 2015 WL 5562175 (D. Colo. 2015); Day v. Fortune Hi-Tech Marketing, Inc., 536 Fed.Appx. 600 (6th Cir. 2013); Canada v. Yak America, 2012 WL 4025745 (S.D. FL 2012).

Plaintiff was not provided with any consideration in exchange for her purported promise not to sue Defendants.  In other words, **Defendants gave her nothing.**  Joy Hurt purchased her property in 2005 (i.e., during the time encompassed by the Cox settlement), but the piping did not leak until February 2017.  Similarly, there are others in the putative class who either owned real

---

[1] As Defendants cite, the final revised settlement purportedly increased substantially the total settlement fund.  See MOL at 3 (quoting Cox, 1995 WL 775363, at *9).  To the extent Defendants intend to infer that such increase must have been in exchange for an increase in the settlement's preclusive scope, this link is entirely speculative and is directly contradicted by the Cox court's statement that its changes would have no adverse impact on any class member. See id. at *11.

property with PB Piping Systems during the years governed by the <u>Cox</u> settlement and did not experience any leaks prior to 2009, **or** who did not even purchase their property with a PB Piping System until after 2009.  It is patently unfair to just dismiss such claims out of hand and not allow this action.  Plaintiff has suffered real damages and should be allowed to seek justice.

Arkansas has no applicable statute of repose but a three-year statute of limitations.  A.C.A. sec. 16-116-103.  Having experienced a leak in her PB Piping System in 2017, Plaintiff, therefore, could bring an action against Defendants now *but for the alleged preclusive effect of the Cox settlement*.  Determining the useful life of a product, after all, is a question of fact for the jury. <u>W.M. Bashlin Co. v. Smith</u>, 277 Ark. 406, 415 (1982).  Defendants claim, however, that Ms. Hurt gave up her right to sue Defendants now because of a settlement agreement and order that lapsed in 2009.  In other words, Defendants are arguing the **absence** of any consideration from the Defendants to Ms. Hurt and others is nevertheless sufficient to bind Plaintiff to the contract/settlement.

Absolutely no benefits were conferred on Plaintiff.  An extended warranty which expired in 2009, as argued by Defendants, did not provide **anything** to Plaintiff.  The only thing conferred on Plaintiff was the **removal** of the right to sue Defendants now.  That is not consideration.  Plaintiff simply should not be bound by the settlement contract accompanied by consideration only with respect to a limited subset of those it purported to bind, namely, **those who experienced leaks prior to expiration of the claims period in 2009.**

No other members of the <u>Cox</u> settlement class have "tried … to avoid the final judgment of the Tennessee Court" on the basis no consideration had been given to the plaintiffs.  MOL at 2.  The only two cases cited in this regard by the Defendants are inapposite and clearly distinguishable.  <u>See id.</u> at 2, 17 (discussing <u>Nobl Park, L.L.C. of Vancouver v. Shell Oil Co.</u>, 95

P.3d 1265 (Wash. App. 2004); Hospitality Mgmt. Assocs., Inc. v. Shell Oil Co., 591 S.E.2d 611 (S.C. 2004)). Crucially, both of these cases were decided in 2004, when the claims period under the Cox settlement was still in effect. Accordingly, it appears the plaintiffs in both cases could have made claims under the Cox settlement but simply chose to sue instead. See Nobl Park, L.L.C. of Vancouver v. Shell Oil Co., 95 P.3d 1265 (Wash. App. 2004); Hospitality Mgmt. Assocs., Inc. v. Shell Oil Co., 591 S.E.2d 611 (S.C. 2004). Such an option is not available to Plaintiff. The Defendants long ago stopped paying for the damage caused by their defective product.

**C. Plaintiff Was Not Represented in Cox and Has Not Received Due Process**

The Fourteenth Amendment requires far more than the perfunctory due-process assessment advocated in Defendants' Motion. Regardless of whether the Cox settlement *notice* was sufficient, Plaintiff's representation in the Cox proceedings was clearly lacking.

"Before the bar of res judicata may be applied to the claim of an absent class member, it must be demonstrated that invocation of the bar is consonant with due process." See, e.g., Johnson v. Gen. Motors Corp., 598 F.2d 432, 436 (5th Cir. 1979); accord Hansberry v. Lee, 311 U.S. 32, 42 (1940). Due process requires not just adequate of notice of the original action but also adequate representation in such action. See, e.g., Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 798 (1985); Hege v. Aegon USA, LLC, 780 F. Supp. 2d 416, 429 (D.S.C. 2011) (outlining two-pronged due process analysis). In the words of Judge Wright, "[a]dequacy of representation is perhaps the most important of all prerequisites to certification of a class action," Pipes v. Life Inv'rs Ins. Co. of Am., 254 F.R.D. 544, 550 (E.D. Ark. 2008), and a subsequent claim may be precluded only if the interests of the claimant were in fact adequately represented by the original named plaintiffs." Hansberry, 311 U.S. at 42-43. If the original named plaintiffs/class representatives had interests antagonistic to those of some absent class members, there is no assurance that anyone advanced the strongest arguments in favor of the unrepresented interests, and granting preclusive effect to

7

the settlement may well violate the absent class members' due process rights.  See, e.g., In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig., 827 F.3d 223, 233 (2d Cir. 2016), see also Pipes, 254 F.R.D. at 550 ("Named plaintiffs cannot fairly and adequately protect the interest of the class they seek to represent if the claim they pursue is antagonistic to the interests of other class members.").

In the original PB Piping Systems litigation (Cox), the disparities between the named plaintiffs' interests and those of Plaintiff Hurt are stark.  The class representative in Cox had already experienced "Qualifying Leaks" at the time of the settlement and her interests thus naturally sought to maximize and expedite her compensation for such damages.  See Compl. ¶¶ 18-19.  But if Defendants' reading of the settlement scope is correct, Ms. Cox represented not just homeowners who had already experienced Qualifying Leaks, but anyone who owned, or would ever own, a home fitted with a PB Piping System (e.g., Plaintiff).  Logically, the interests of those not eligible for relief at the time of the settlement were not obtaining "generous immediate payments" for past damage but rather ensuring the availability of reasonable and inflation-protected compensation should their pipes fail in the future.  See Amchem Products, Inc. v. Windsor, 521 U.S. 591, 595 (1997).  Yet Ms. Cox had no incentive to pursue the latter interest, giving rise to a "great risk" that she would "sell out [future] claims for terms that would tilt toward [present ones]."  In re Payment Card, 827 F.3d at 233.[2]

---

[2] And though the mere risk of such favoritism is sufficient to deny the Cox settlement's preclusive effect, there is various evidence that this risk was indeed realized here. Most notably, if, as Defendants suggest, the expansion of benefits in the revised Cox settlement was consideration for a purposeful expansion of the settlement's preclusive scope, see supra note 1, then the named plaintiff in Cox did quite clearly buy more favorable terms for class members whose interests aligned with her own, to the direct detriment of potential future claimants like the Plaintiff herein. See MOL at 3 (quoting Cox, 1995 WL 775363, at *9).

As Defendants' own authorities make clear, this is a quintessential inadequate-representation scenario.  See Nobl Park, 95 P.3d at 1271 & n.5 (indicating "*concerns as to future plaintiff's recovery*, such as an *expired settlement* or depleted funds" entail a conflict of interest sufficient to constitute inadequate representation) (emphasis added).[3]  The structural defects in the Cox settlement created a "fundamental conflict" within the class and "sapped class counsel of the incentive to zealously represent" future claimants like Plaintiff.  In re Payment Card, 827 F.3d at 236.  As in the Payment Card case, the only unified interests served by herding the competing claims into a single class were the interest of class counsel in fees and the interest of defendants bundling and disposing of all possible claimants.  See id.

That the Cox settlement may have afforded due process to *some* class members or in other respects (such as notice) is irrelevant. Due process is an individualized inquiry, and both the Nobl Park and Hospitality Management cases involved circumstances very different from those presented here.  As noted above, those court's extension of full faith and credit to the Cox settlement meant only that the plaintiffs therein had to pursue relief through the settlement claims process rather than independent litigation.  See Nobl Park, 95 P.3d at 1271; Hospitality Mgmt., 591 S.E.2d at 623.  By contrast, extending full faith and credit to Cox as against Class members such as Plaintiff herein would have far more drastic due process ramifications: they would be

---

[3] The Nobl Park court contrasted this valid inadequate-representation scenario with the insufficient disparity of interests claimed by the plaintiff therein.  Id. at 1270-71.  The Nobl Park plaintiff, multi-unit owner, claimed that its interests were not adequately represented by the Cox plaintiff, a single unit owner.  Id. at 1271.  The court, however, could find no significant difference between the interests of these two groups, both of which sought to maximize recovery of their replacement costs and damages under the settlement.  Id.  As noted by the court, this was *not* a case of truly conflicting interests, such as between presently damaged class members and those who might be damaged in the future.  Id. at 1271 n.5.  But that is the very scenario presented to the Court now.

denied *any* remedy. Their rights would not be limited but rather *extinguished*, by virtue of a settlement in which they did not participate and which provided them nothing.

Moreover, the narrow collateral due-process review undertaken by the <u>Nobl Park</u> and <u>Hospitality Management</u> courts is not binding on this Court. "It is incumbent upon [the Court] to apply the same scrutiny to state-court judgments that the Supreme Court would apply [including the] due-process imperative [of] reconsidering whether the class judgment complied with the due process clause." <u>Gooch v. Life Investors Ins. Co. of Am.</u>, 672 F.3d 402, 421 (6th Cir. 2012).  The approach of the <u>Hospitality Mgmt.</u> court—limiting review to whether the certifying court had due process safeguards in place—is far from universal.  See <u>Hospitality Mgmt.</u>, 591 S.E.2d at 622-23; <u>compare, e.g., Gooch</u>, 672 F.3d at 420; <u>Hege</u>, 780 F. Supp. 2d at 426-29; <u>see also</u> Stephanie J. Bowser, *Collateral Attacks Upon Class Action Judgments: Ending the Scope of Review Debate by Addressing the Underlying Notice Problems*, 13 Roger Williams U.L. Rev. 631, 635-40 (2008). In any event, <u>Hospitality Mgmt.</u> "and many cases in accord base their narrow scope of inquiry, at least in part, on an absent class member's ability to mount substantive challenge to the settlement court's due process compliance on direct review." <u>Hege</u>, 780 F. Supp. 2d at 428.  The appropriate level of collateral review depends in part on the specific circumstances presented, and the level of deference afforded by the <u>Hospitality Mgmt.</u> court is properly limited to circumstances like those therein where direct appellate review is available.  See <u>Hege</u>, 780 F. Supp. 2d at 428-29; <u>see also</u> <u>Hospitality Mgmt.</u>, 591 S.E.2d at 659.  Where, as here, Plaintiff had no opportunity to appeal the class certification decision directly, the weight of authority supports a thorough substantive due process review.

## II.   PLAINTIFF'S CLAIMS ARE PROPERLY PLED AND SURVIVE THE STANDARD OF A MOTION TO DISMISS

### A. Plaintiff Has More Than Adequately Pleaded Her Strict Liability Claim

Defendants contend that Plaintiff Hurt's claim for strict liability fails because she does not negate other possible causes of the failure of the PB Piping System in her residence. But Defendants' contention is wildly premature and unfounded.  There has been absolutely no discovery taken or exchanged and the Defendants have no knowledge of what evidence or proof Ms. Hurt has regarding her claims. Ms. Hurt has properly pled her count for strict liability and Defendants' attack must fail.

As previously stated in this memorandum, all factual allegations made in Ms. Hurt's complaint must be accepted as true for the purposed of deciding Defendants' Motion to Dismiss. It is clearly pled in Ms. Hurt's complaint that the defective condition is the proximate cause of the harm to Ms. Hurt's property. See Compl. ¶¶ 67-73.

Defendants' argument is even further flawed, as they have made the broad assumption that it is necessary to negate the other possible causes of failure. This is not necessary in all strict liability cases. According to the Eighth Circuit and the Arkansas Supreme Court, "[p]roof of a specific defect is not required when common experience teaches the accident would not have occurred in the absence of a defect".  Dancy v. Hyster Co., 127 F.3d 649, 653 (8th Cir. 1997) (quoting Higgins v. General Motors Corp., 699 S.W.2d 741, 743 (Ark. 1985)).  In addition, Arkansas law does not require a party to present direct proof as to every element in a products liability case---circumstantial evidence may be presented to establish a prima facie case. Yielding v. Chrysler Motor Co., 783 S.W.2d 353, 355 (Ark. 1990) ("It is not necessary to establish these elements [of a products liability case] by direct proof; circumstantial evidence will suffice.").

Defendants have not presented any proof as to how or why a PB Piping System in a home would spring multiple leaks in various areas unless the product was defective.

Defendants' proximate cause argument against Ms. Hurt's strict liability claim is premature and unfounded.   However, even if the argument was not premature and unfounded, the circumstantial inference can be made, based upon the claims presented in Ms. Hurt's complaint, that the PB Piping System was defective.

**B.   Plaintiff Has More Than Adequately Pleaded Her Negligence Claim**

Defendants claim Plaintiff's negligence claim fails because she has not alleged any facts regarding the use, maintenance, repair, or other possible causes of the damage to her home. Their argument, however, fails for reasons similar to the preceding section.   The contention is wildly premature and unfounded.   Again, there has been absolutely no discovery taken or exchanged, expert or otherwise, and the Defendants have no knowledge of what evidence or proof Ms. Hurt has regarding her claims, including what evidence or proof she has to negate other possible causes of the failure of the PB Piping.

To state a claim for negligence under Arkansas law, a plaintiff must allege that a duty of care was owed, that the defendant breached that duty of care, and that the breach was the proximate cause of the plaintiff's injuries.  Branscumb v. Freeman, 360 Ark. 171, 179 (2004).  All of the requirements for a negligence claim, including that the defective condition of the PB Piping System was the proximate cause of the harm to Ms. Hurt's property claim, are clearly pled in Ms. Hurt's complaint.  See Compl. ¶¶ 62-66.  When accepting these allegations in the complaint as true, Defendants' attack on Ms. Hurt's negligence claim fails.

**C.  The Defective Polybutylene Piping Systems are Unreasonably Dangerous**

PB Piping Systems are defective and unreasonably dangerous, or, at the very least, whether the PB Piping Systems are or are not defective and unreasonably dangerous are questions of fact for a jury to determine.  Note also, however, that relevant caselaw and authority support the idea that a defective home plumbing system is unreasonably dangerous.

Under Arkansas law, a "supplier of a product is subject to liability in damages for harm to a person or to **property** if: (1) [t]he supplier is engaged in the business of manufacturing, assembling, selling, leasing, or otherwise distributing the product; (2) [t]he product was supplied by him or her in a defective condition that rendered it unreasonably dangerous; and (3) [t]he defective condition was a proximate cause of the harm to a person or to property." A.C.A. §4-86-102; Ruminer v. General Motors Corp., 483 F.3d 561, 563 (8th Cir. 2007).   Arkansas law defines "unreasonably dangerous" to mean dangerous "to an extent beyond that which would be contemplated by the ordinary and reasonable buyer, consumer, or user who acquires or uses the product." A.C.A. §16-116-102(7)(A); Ruminer, 483 F.3d at 563-64.  Arkansas's strict liability statute is taken "substantially verbatim" from the Restatement (Second) of Torts § 402A. Berkeley Pump Co. v. Reed-Joseph Land Co., 653 S.W.2d 128, 131 (Ark. 1983).

Plaintiff's complaint does not allege a case of common plumbing leaks.  The defective PB Piping System is unreasonably dangerous beyond the extent which would be contemplated by an ordinary and reasonable buyer.  This is a case of systemic and widespread failures of the pipes and the fittings.  No consumer would ever buy a plumbing system and contemplate the possibility that it might be defective and experience systemic failures causing substantial damage to one's home.

In Bureau Ins. Co. v. Case Corp., the Arkansas Supreme Court found that a tractor that caught fire was unreasonably dangerous. 878 S.W.2d 741, 744 (Ark. 1994). The Arkansas

Supreme Court held that "[t]here is no reasonable argument to be made that a tractor which suddenly catches fire during normal operation is not unreasonably dangerous." Id.  The same logic applies to Ms. Hurt's claims.  It is simply not reasonable to argue that a plumbing system which suddenly and systemically springs massive leaks during normal use is not unreasonably dangerous. The defect in the PB Piping Systems here occurred during the manufacturing process of the resin for the pipes and the fittings.  Said defect poses an unreasonable danger to any property where the PB Piping System is installed. A property's water supply piping system, being used normally and as expected, that suddenly fails and causes extensive flooding damage is "unreasonably dangerous" to a person's property.

As previously stated, Arkansas's strict liability statute tracks the Restatement (Second) of Torts § 402A "substantially verbatim". Berkeley Pump Co., 653 S.W.2d at 131 (Ark. 1983).  Other courts that have adopted this Restatement or similar language have held, under comparable facts, that a plaintiff's evidence of a product failure which caused water damage to a building successfully presented a *prima facie* case of strict liability, including adequate evidence that the product was "unreasonably dangerous." See Small v. Baloise Ins. Co. of Am., 753 So.2d 234 (La. App. 1998) (holding defective plastic toilet valve that failed and caused flooding and water damage was "unreasonably dangerous"); Kelleher v. Marvin Lumber & Cedar Co. 891 A.2d 477 (N.H. 2005) (holding that evidence windows were treated with a defective wood preservative which led to water damage to a house was sufficient to present the "unreasonably dangerous" element to a jury); Wetzel v. Capital City Real Estate, LLC, 73 A.3d 1000 (D.C. App. 2013) (holding that evidence of water damage and mold resulting from water intrusion through windows and a wall in a condominium unit satisfied the "unreasonably dangerous" element and presented a prima facie case for strict liability).

14

The Defendants rely heavily on the <u>Berkeley</u> case to support their argument a PB Piping System is not unreasonably dangerous.  However, the <u>Berkeley</u> case is highly distinguishable from the circumstances here.  In <u>Berkeley</u>, the plaintiff received a favorable verdict on its strict products liability claims against defendant concerning irrigation pumps used to supply water to crops.  The plaintiff claimed that the pumps were expected to pump more gallons per minute than what the pumps were actually pumping per minute. <u>Id</u>. at 129-30.  On appeal, the defendant argued that the pumps were inadequate but not "unreasonably dangerous." <u>Id</u>.  The Supreme Court of Arkansas agreed with the defendant and held that although the irrigation pumps were inadequate and dysfunctional, they were not unreasonably dangerous. <u>Id</u>. at 132-33.

Ms. Hurt's claims are obviously distinguishable from those in <u>Berkeley</u>.  The defective aspect of the product in <u>Berkeley</u> was that the pump was not pumping the desired amount of water. The pump did pump water, as it was designed to do, but simply did not pump enough. Here, the PB Piping System was not just inadequate, but the pipes and the fittings failed and let out large amounts of water.  A PB Piping System is designed to carry water throughout one's property, but the pipes and the fittings fail and cause flooding that can result in significant property damage. This is not simply a case of the PB Piping System failing to carry enough water throughout one's home like the situation in <u>Berkeley</u> where a pump did not pump enough water.  This is a case where a product's normal use results in significant property damage.

### III.   THE <u>BRISTOL-MYERS</u> CASE DOES NOT FORECLOSE THIS ACTION

Consistent with the Supreme Court's decision in <u>Bristol-Myers</u> <u>Squibb Co. v. Super. Ct. of California</u>, 137 S. Ct. 1773, 1776 (2017), the Court should apply established principles of jurisdiction and should decline to strike the proposed class or decide class certification at this early stage.  Defendants do not challenge personal jurisdiction with respect to Plaintiff Hurt's claims,

and the jurisdictional inquiry begins and ends with the named plaintiff.  Defendants' argument to the contrary greatly exceeds the intended and reasonable scope of the <u>Bristol-Myers</u> precedent and would create a substantial new limitation on class actions that would increase costs for all parties, with no corresponding benefit to defendants.

### A.  Jurisdiction Is Determined Based on the Named Plaintiff and Her Claims

<u>Bristol-Myers</u> and the majority of cases relied upon by Defendants were not class actions but rather mass tort cases involving numerous named plaintiffs *joined* in a single action—each plaintiff asserting his or her *own* claims against the defendant.[4]  Not surprisingly, given the direct nature and independence of the named plaintiffs therein, these courts found personal jurisdiction lacking for claims with no independent relationship to the jurisdiction.  Indeed, to hold otherwise would have opened the door to egregious forum shopping, with suits involving a nationally sold product able to be brought in whatever jurisdiction plaintiffs judged to be most favorable (provided there was a single local plaintiff).  Beyond this logical clarification though, the U.S. Supreme Court in <u>Bristol-Myers</u> expressly disclaimed any change in existing law, stating instead that "[o]ur settled principles regarding specific jurisdiction control this case." 137 S. Ct. 1773, 1781 (2017); <u>accord</u> <u>In re Chinese-Manufactured Drywall Prods. Liab. Litig.</u> ("<u>Chinese Drywall</u>"), MDL 09-2047, 2017 WL 5971622, at *11, 16 (E.D. La. Nov. 30, 2017) (noting that <u>Bristol-Myers</u> "does not speak to or alter class action jurisprudence" and "did not change existing law, but rather applied settled

---

[4] <u>See</u> <u>Bristol-Myers</u>, 137 S. Ct. at 1778 (mass tort case based on claims of 678 named plaintiffs suing in their individual capacities); <u>Dyson v. Bayer Corp.</u>, 4:17CV2584 SNLJ, 2018 WL 534375, at *1 (E.D. Mo. Jan. 24, 2018) (mass tort action structurally analogous to <u>Bristol-Myers</u>, with 95 named plaintiffs); <u>Jinright v. Johnson & Johnson, Inc.</u>, 4:17CV01849 ERW, 2017 WL 3731317, at *1 (E.D. Mo. Aug. 30, 2017) (same—83 named plaintiffs); <u>Jordan v. Bayer Corp.</u>, 4:17-CV-865 (CEJ), 2017 WL 3006993, at *1 (E.D. Mo. July 14, 2017) (same—94 named plaintiffs); <u>Siegfried v. Boehringer Ingelheim Pharm., Inc.</u>, 4:16 CV 1942 CDP, 2017 WL 2778107, at *1 (E.D. Mo. June 27, 2017) (same—94 named plaintiffs).

Fourteenth Amendment jurisprudence").   By Defendants' reading, however, Bristol-Myers effected a drastic revision of class action procedure wherein a class allegation may be struck without regard for Rule 12(f) jurisprudence, or a class certification decision made without regard for the criteria set forth in Rule 23.   In practice, the rule Defendants now propose would require all nationwide class actions to be brought on a defendant's home turf regardless of the nature of the claims asserted and the efficiency considerations of Rule 23.

Personal jurisdiction is based on what claims have been asserted, and, in a proposed class action, only the named plaintiff asserts claims.   Bristol-Myers clearly does not prescribe wholesale departure from the practice of assessing personal jurisdiction with respect to the claims actually brought in the case.   Although the motion to dismiss is premised on the proposition that absent class members should be considered *plaintiffs* asserting *claims* against the Defendants, Defendants fail to offer any support for this view.   Here, the named Plaintiff, Ms. Hurt, has brought the claims, and unlike the mass tort cases upon which Defendants rely, the claims of all absent class members are not and will never be joined.   See Fed. R. Civ. P. 23(a)(1) (providing that a class action is only proper where "the class is so numerous that joinder of all members is impracticable").   Class members necessarily remain uninvolved as the named plaintiff pursues their interests. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 810 (1985) (explaining that an absent class member "is not required to do anything … [h]e may sit back and allow the litigation to run its course"). If a class is certified, absent class members may *then* "intervene and present claims or defenses, or … otherwise come into the action," Fed. R. Civ. P. 23(d)(1)(B)(iii).   This rule clearly implies that class members are not considered to be asserting claims or to be part of the class action.

Furthermore, absent class members are not *parties* in any substantive respect.   Absent class members need not hire counsel or appear in the litigation. Shutts, 472 U.S. at 810.   They are

generally not subject to counterclaims or cross-claims or liability for litigation expenses. Id.; see also Donson Stores, Inc. v. Am. Bakeries Co., 58 F.R.D. 485, 488–89 (S.D.N.Y. 1973) (holding that "counterclaims are based on individual competitive situations and therefore can only be asserted against parties to this litigation," not absent class members).  Furthermore, absent class members generally are not subject to discovery, see, e.g., In re Corrugated Container Antitrust Litig., MDL 310, 1981 WL 2020, at *1 (S.D. Tex. Jan. 27, 1981), nor can they file their own appeals from adverse judgments.  In re Brand Name Prescription Drugs Antitrust Litig., 115 F.3d 456, 458 (7th Cir. 1997), as amended (July 17, 1997).  Except in limited or unusual circumstances, an absent class member is not considered a plaintiff nor does his or her role resemble that of a plaintiff in substance. Indeed, this is the defining feature of a class action.  Wainwright v. Kraftco Corp., 54 F.R.D. 532, 534 (N.D. Ga. 1972) ("[I]f class members were automatically deemed parties, all class actions would be converted into massive joinders. Such a result would emasculate Rule 23").  Because absent class members are not parties asserting their claims in the litigation, they are not subject to dismissal based on personal jurisdiction, which is necessarily based on what claims have been asserted.

Even some of Defendants' own authorities support looking not to potential class members but only to named plaintiffs when assessing personal jurisdiction. The holding of In re Dental Supplies Antitrust Litigation, 16CIV696BMCGRB, 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017), was that the in-forum activities of the defendant in question (one of four) were not sufficiently connected to the *named plaintiffs'* claims so as to sustain personal jurisdiction in the forum. Jurisdiction with respect to *absent class members* was never considered. While Defendants contend the Dental Supplies court's language supports its present position, *see* MOL p.28, this construction has been definitely rejected. See Chinese Drywall, 2017 WL 5971622, at *13 (holding

that an essentially identical argument by defendants based on the same language from <u>Dental Supplies</u> "distorted the <u>Dental Supplies</u> court's strong wording and its implication"). The actual import of the <u>Dental Supplies</u> court's reasoning was that where a defendant has "no purposeful availment or direct activity in the forum state … a class action cannot coerce a defendant into that court's jurisdiction." <u>Id</u>. This proposition, while undisputed, is immaterial. The <u>Dental Supplies</u> court's inquiry remained properly focused on the named plaintiffs. Accordingly, the <u>Dental Supplies</u> precedent, if anything, undermines Defendants' assertion that <u>Bristol-Myers</u> calls for jurisdictional determinations as to absent class members.

While Defendants claim their due process rights will be violated if the Multi-State Class proposal proceeds, they fail to articulate how this might occur. The procedural checks on representative actions were specifically designed to safeguard defendants' due process rights and will continue to do so here. Defendants will be able to respond to Plaintiff's claims, assert defenses and oppose class certification, and, if a class is certified, Defendants can appeal under Rule 23(f) or move to alter the class scope under Rule 23(c)(1)(C). In addition, the substantive requirements of Rule 23, including commonality, predominance, superiority, and adequacy of representation, ensure that Defendants will not face class-wide claims absent strict assurances of fairness. <u>See</u> S. REP. 109-14, 14, 2005 U.S.C.C.A.N. 3, 14 ("[T]he strict requirements of Rule 23 … are intended to protect the due process rights of both unnamed class members and defendants.").

Defendants' reliance on <u>Shutts</u> is misplaced. The "personal jurisdiction concerns" in <u>Shutts</u> related to the binding effect of a certified class settlement on absent class members. It is undisputed that absent class members have certain due process rights, at least post-certification, but this fact is immaterial to the question of whether absent class members should be on the same footing as named plaintiffs for purposes of initial jurisdictional determinations. <u>Shutts</u> creates no rule to that

effect.  In fact, the clear implication of the <u>Shutts</u> opinion is that the personal jurisdiction concerns implicated by absent class members are addressed, not under the standard personal jurisdiction framework but pursuant to Rule 23, which itself ensures that due process is satisfied.  <u>Shutts</u>, 472 U.S. 797, 798 (1985).

While Defendants are correct that some courts have construed <u>Bristol-Myers</u> as requiring jurisdictional assessment of proposed classes, many others have reached a contrary result.  In <u>Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.</u>, the court distinguished a class action from a mass-tort cases like <u>Bristol-Myers</u>, wherein "each plaintiff [is] a real party in interest to the complaints, meaning that they [are] named as plaintiffs in the complaints." 17-CV-00564 NC, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017).  Citing this clear distinction and the lack of support for extending <u>Bristol-Myers</u> to absent class members, the court denied defendant's motion to dismiss and motion to strike. <u>See</u> <u>id.</u> at *5-6.  In <u>Day v. Air Methods Corp.</u>, the court reached a similar decision, concluding that "the inquiry for personal jurisdiction lies with the named parties of the suit asserting their various claims against the defendant, not the unnamed proposed class members." CV 5: 17-183-DCR, 2017 WL 4781863, at *2 (E.D. Ky. Oct. 23, 2017).

Most recently, the court in the <u>Chinese Drywall</u> multidistrict litigation analyzed the <u>Bristol-Myers</u> precedent in substantial depth and determined based on several factors that unnamed class members should not be considered for personal jurisdiction purposes.  2017 WL 5971622, at *22.  Among the various considerations addressed by the court was the federalism issue noted in <u>Bristol-Myers</u>.  As cited by Defendants, the emphasis on federalism in <u>Bristol-Myers</u> was a determinative factor in <u>DeBernardis v. NBTY, Inc.</u>, wherein the federalism comments in <u>Bristol-Myers</u> suggested to the court the "close question" of whether personal jurisdiction should be determined with respect to absent class members should be answered in the affirmative.  17 C 6125, 2018 WL

461228, at *2 (N.D. Ill. Jan. 18, 2018).  Yet, when the federalism issue is truly unpacked, it becomes clear that federalism concerns in Bristol-Myers are not present in federal-court class actions. As explained by the Chinese Drywall court, the specific federalism concerns voiced in Bristol-Myers pertained to States "reach[ing] out beyond the limits imposed on them by their status as coequal sovereigns in a federal system" and defendants being forced to "submit[] to the coercive power of a State that may have little legitimate interest in the claims in question." Chinese Drywall, 2017 WL 5971622, at *19-20. As these potentialities involve state courts transgressing their established roles, it is clear than the federalism concerns voiced in Bristol-Myers "mainly apply to state courts." Chinese Drywall, 2017 WL 5971622, at *20.  Conversely, these concerns are not implicated by a nationwide class action in federal court.

In light of the foregoing, Bristol-Myers should not be extended to require a preemptive jurisdictional determination concerning the jurisdictionally permissible scope of what class might ultimately be certified. Furthermore, any logical extensions of Bristol-Myers beyond its expressly stated precedential scope must remain limited in light of the Supreme Court's repeated emphasis on the mere clarificatory rather than revisionary effect of its holding.  Accordingly, Bristol-Myers cannot be construed in the manner Defendants propose, which would effect drastic changes to the structure of class actions and impose a new, judicially created, prerequisite inconsistent with governing law and the Federal Rules. Accordingly, established jurisprudence should not be abandoned, certainly not on so tenuous a basis.  Because Defendants fall far short of carrying its burden thereunder, the class allegations should be permitted to proceed.

**B.  Narrowing or Striking the Class Allegations is Likewise Inappropriate**

As established above, "dismissal" of absent class members based on personal jurisdiction is improper, but even if Defendants' argument in this regard is interpreted as a motion to strike the class allegations or preemptively deny class certification, it must nevertheless be denied.

As explained above, a Rule 12(b)(2) motion is not the proper vehicle for "dismissing" a tentatively proposed class, as the hypothetical class members are not *parties* and are not asserting *claims* in the action. See, e.g., Antoon v. Securus Techs., Inc., 5:17-CV-5008, 2017 WL 2124466, at *4 (W.D. Ark. May 15, 2017) ("[T]he determination of whether specific personal jurisdiction exists is fundamentally a *claim-specific* inquiry."). The only plaintiff in this action is Ms. Hurt, and the only claims asserted are hers. Accordingly, what Defendants could be construed not actually as dismissal based on personal jurisdiction but rather the removal of Plaintiff's allegations concerning the suitability of this case for class treatment.  In substance, then, Defendants' request is a motion to strike pursuant to Rule 12(f), which is clearly premature and cannot be granted.

Courts may invoke Rule 12(f) to strike any "redundant, immaterial, impertinent, or scandalous matter" from a pleading. Fed. R. Civ. P. 12(f). "To prevail on a Rule 12(f) motion to strike, the defendants must demonstrate that the allegations at issue do not bear on the subject matter of the litigation and will prejudice them." Spencer v. Dawson, 04 C 5048, 2005 WL 643331, at *6 (N.D. Ill. Mar. 3, 2005) this is an "extreme measure, and, as a result, … '[Rule-12(f) motions] are viewed with disfavor and are infrequently granted." Stanbury L. Firm v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000) (quoting Lunsford v. United States, 570 F.2d 221, 229 (8th Cir.1977)); accord Daigle v. Ford Motor Co., 713 F. Supp. 2d 822, 831 (D. Minn. 2010) ("[M]otions to strike are to be granted only on rare occasions, and when filed at the pleading stage, such motion is even less appropriate.").

Striking class allegations is "even more disfavored," as it requires a court "to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." Ironforge.com v. Paychex, Inc., 747 F. Supp. 2d 384, 404 (W.D.N.Y. 2010) (quoting Francis v. Mead Johnson & Co., No. 10–CV–701, 2010 WL 3733023, at *1 (D.Colo. Sept. 16, 2010)); accord Ford v. Citimortgage, Inc., 3:15-CV-206-DPM, 2015 WL 7429990, at *3 (E.D. Ark. Nov. 20, 2015) ("The law disfavors striking class allegations at the pleading stage.").  As Defendants fail to make any showing that this case is "so unique or different that a motion to strike at the pleading stage is appropriate," Daigle, 713 F. Supp. 2d at 832," the class allegations should not be stricken.

The same prejudice will result if Defendants' motion is construed as a request for preemptive denial of class certification. Such a motion is atypical but substantively similar to a motion to strike, asking "that the Court preemptively terminate the class aspects of this litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." Bryant v. Food Lion, Inc., 774 F. Supp. 1484, 1495 (D.S.C. 1991).  Beyond the above noted disfavor for such premature determinations, Rule 23 and jurisprudence thereunder further inform the issue. Unlike a typical class certification motion, a preemptive motion like the one at issue asserts "that certification is precluded as a matter of law." Id. Such a motion must be denied unless it is clear no class could be certified under any factual circumstances.  See id.  Like striking a pleading, preemptively denying class certification is an extreme remedy. See, e.g., Lawson v. Life of the S. Ins. Co., 286 F.R.D. 689, 695 (M.D. Ga. 2012).  A class certification decision "usually should be predicated on more information than the complaint itself affords."

Burgess v. Exxon Mobil Corp., 4:13CV00199 BSM, 2013 WL 5944077, at *1 (E.D. Ark. Oct. 31, 2013) (quoting Wright, Miller, and Kane, 7AA Fed. Prac. & Proc. § 1785.3 at pg. 466 (3d ed.2005)). As a result, courts "typically wait to decide whether to allow an action to proceed on a class basis until the parties have undertaken discovery relating to the issue of class certification." Id. If the court does opt to rule on class certification early in the litigation before the supporting facts are fully developed, then it should err in favor and not against the maintenance of the class action, as the is class will remain subject to modification. Jones v. Diamond, 519 F.2d 1090, 1098 (5th Cir. 1975).

Here, Defendants have failed to carry their "heavy burden" of demonstrating that no class could be certified. Bryant, 774 F. Supp. at 1495. Indeed, this would be a difficult argument to make given that the class is, but for timing considerations, a subset of the original settlement class. In any event, the question is not whether class certification is likely but whether Defendants have shown it to be impossible. They have not. Defendants forego any reference to Rule 23, and their contentions concerning jurisdiction amount to a choice-of-law argument, which is definitively premature at this stage.

Plaintiff alleges that her claims and those of the class members turn on the same legal issues. Cf. Rios v. State Farm Fire & Cas. Co., 469 F. Supp. 2d 727, 741 (S.D. Iowa 2007). Although there may be conflicts of law governing class members' respective claims, "it is premature for the Court to address that issue presently." Id. At this stage, it is still unclear what state laws will be implicated and what claims will remain after the completion of class discovery. See Id. at 741-42. The Court may ultimately determine, after a "rigorous analysis on the conflicts of law *at the certification stage* after further discovery," that such conflicts preclude certification, Id. at 741 (emphasis in original), but, based on the pleadings alone, it cannot be concluded "*beyond*

*doubt*" that class certification is impossible. Id. (citing <u>Parnes v. Gateway 2000, Inc.</u>, 122 F.3d 539, 546 (8th Cir. 1997) (emphasis added); <u>see also</u> <u>Mojica v. Securus Techs., Inc.</u>, 5:14-CV-5258, 2015 WL 429997, at *6 (W.D. Ark. Jan. 29, 2015) (citing <u>Tyler v. Alltel Corp.</u>, 265 F.R.D. 415, 423-27 (E.D.Ark.2010)) (noting that, even if dozens of states are implicated and causes of action vary from state to state in material respects, "that would not be the end of the matter;" a "fact-intensive choice-of-law analysis" would still be necessary).

Moreover, recent Eight Circuit decisions dispel any notion that a multistate class represented by a single named plaintiff cannot be certified. <u>In re Emerson Electric Co. Wet/Dry Vac Mktg. and Sales Litig.</u>, 4:12MD2382 HEA, 2017 WL 5971621, at *7 (E.D. Mo. Dec. 1, 2017).

## CONCLUSION

This action should not be dismissed as argued by Defendants.  Such a dismissal would violate the rights of Plaintiff to due process.  In addition, no consideration was provided to Joy Hurt or the putative class in exchange for a release and promise not to sue Defendants so no contract between them exists.  Ms. Hurt's damages are real and were proximately caused by a defective PB Piping System.  The Defendants profited from their sale of the component parts of the PB Piping Systems to Joy Hurt and many other consumers and should not be permitted to now escape liability.  Fundamental fairness and justice demand the complaint not be dismissed.

Dated: March 9, 2018                                Respectfully submitted,


/s *Jay P. Dinan*_____
Jay P. Dinan*
Daniel Calvert*
*Admitted Pro Hac Vice*
**PARKER WAICHMAN LLP**
27300 Riverview Center Blvd, Suite 103

Bonita Springs, FL 34134
Tel:      239-390-1000
Fax:     239-390-0055
jdinan@yourlawyer.com
dcalvert@yourlawyer.com
pwflpleadings@yourlawyer.com

Chris A. Averitt
AR Bar No. 98123
**Scholtens & Averitt, PLC**
600 South Main Street
Jonesboro, AR 72401
Tel:      870-972-6900
Fax:     870-972-6903
chris@scholtensaveritt.com

## CERTIFICATE OF SERVICE

I, Jay Dinan, declare under penalty of perjury that on March 9, 2018, I electronically filed this Document with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to all counsel of record in this action.

/s *Jay P. Dinan* _____