IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

JOY HURT, ON BEHALF OF HERSELF
AND ALL OTHERS SIMILARLY SITUATED                              PLAINTIFF

V.                       CASE NO. 3:17-CV-0315-DPM

SHELL OIL COMPANY (D/B/A SHELL CHEMICAL
COMPANY) AND CELANESE CORPORATION                             DEFENDANTS

**REPLY IN SUPPORT OF
DEFENDANTS SHELL OIL COMPANY'S AND CELANESE CORPORATION'S
JOINT MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

The class settlement in *Cox* resolved more than a decade of hard-fought litigation and provided consumers with an "extensive" recovery program consisting of reimbursement for repairs and replacement of leaking polybutylene plumbing systems and resulting property damage. *Cox v. Shell Oil Co.*, 1995 WL 775363, at *2 (Tenn. Ch. Nov. 17, 1995). The recovery program lasted from 1995 to 2009, and included notices to subsequent purchasers such as Hurt explaining their rights under the Settlement and providing an opportunity to opt-out. Subsequent purchasers who did not opt out became Settlement Class members for all purposes, and the Final Order released the claims of—and enjoined any future litigation by—those Settlement Class members. *Id.* at *15.

Hurt in opposition does not contest or challenge the basic facts of the *Cox* Settlement. Instead, Hurt challenges basic class action law, including the procedure for releasing and settling class members' claims under Rule 23 and for enjoining future claims for those class members. Notably, Hurt does not contest and thus concedes that defendants followed the notice program approved by the *Cox* court, that she received notice of the *Cox* Settlement, and that she did not opt out. That alone is a sufficient basis for this Court to determine that due process has been satisfied, that Hurt's claims are barred and enjoined by the *Cox* release and injunction, and that her complaint should be dismissed with prejudice. *See, e.g., Thompson v. Edward D. Jones & Co.*, 992 F.2d 187,

1

192 (8th Cir. 1993) ("As a class member who chose not to opt out after notice of the terms of the settlement, appellant is bound by the Order and Final Judgment in Arkansas and must abide by its express terms."); Defs. Br. at 15-20, ECF No. 36 (citing cases). The Court should extend full faith and credit to *Cox*—as other courts have done—and dismiss Hurt's claims.

Separately, each of Hurt's causes of action fails to state a claim under Rule 12(b)(6). To begin, Hurt does not contest or otherwise respond to defendants' argument that her claim under the Arkansas Deceptive Trade Practices Act should be dismissed as a matter of law. Further, in arguing that her home's plumbing system is unreasonably dangerous, Hurt ignores Eighth Circuit precedent holding to the contrary. Moreover, Hurt continues to rely on her complaint's conclusory allegations of proximate cause, which are legally insufficient under *Twombly* and *Iqbal*.

Finally, the Court should dismiss for lack of personal jurisdiction the claims brought on behalf of non-Arkansas residents pursuant to the Supreme Court's decision in *Bristol-Myers Squibb v. Superior Court of California*, 137 S. Ct. 1773 (2017), and related decisions.

**I.      HURT'S CLAIMS ARE BARRED BY THE *COX* SETTLEMENT.**

Hurt argues that her claims should not be barred by *Cox* because: (1) it is unclear whether she is a Settlement Class member; (2) she received no consideration under the *Cox* Settlement because her plumbing did not have a leak until 2017; and (3) her interests were not adequately represented in *Cox*. None of these arguments has merit, and the Court should extend full faith and credit to *Cox* and enforce its release and injunction against Hurt's claims.

     **A.     Hurt Was a Settlement Class Member Who Received Notice of the Settlement and Elected Not to Opt Out, Becoming a Class Member for All Purposes.**

Hurt first tries to avoid the *Cox* release by arguing that the definition of the Settlement Class in the Final Order is ambiguous. But the allegations of her complaint and the plain language of the Final Order belie her position. Hurt alleges that she purchased her home in 2005, and that

2

her home contains the purportedly defective polybutylene plumbing that is at issue in *Cox*. (Compl. ¶¶ 11, 18.) And the Final Order defined the "Settlement Class" to include future owners of real property with the materials at issue, regardless of whether their homes experienced a leak:

> All persons and entities that (1) own real property or structures in the United States in which there was installed between January 1, 1978 and July 31, 1995, polybutylene plumbing with acetal insert or metal insert fittings or a polybutylene yard service line; (2) own or previously owned such real property or structures and have already incurred any cost or expense, by reason of leakage from, or from failure, repair, or removal of, all or any portion of such polybutylene plumbing or yard service line which was installed between January 1, 1978 and July 31, 1995; or ***(3) will own such real property or structures during the term of entitlement to relief under the Settlement Agreement***.

*Cox*, 1995 WL 775363, at *15 (emphasis added). Under this plain and unambiguous language, Hurt qualified as a Settlement Class member, and by failing to opt out after defendants provided subsequent notice of the settlement, she became "a Settlement Class member for all purposes." (Defs. Br. at Ex. 2, Settlement Agreement § 10.2.)

Notwithstanding the plain language of the Final Order, Hurt contends that she may not be a Settlement Class member because the ***preliminary*** approval order "expressly excluded those who did not experience a '"Qualifying Leak."'" (Pl. Br. at 4, ECF No. 41.) But it is of course the Final Order, not the ***preliminary*** order, that controls and precludes Hurt's claims. As the *Cox* court noted, the Final Order does not require a leak for a homeowner to be a Settlement Class member. *Cox*, 1995 WL 775363, at *2.

Hurt also claims that regardless of what the Final Order says, the *Cox* court and parties ***intended*** that she would not be a class member. (Pl. Br. at 4-5.) But a fundamental principle of contract interpretation is that plain and unambiguous language controls; there is no need to delve into any extraneous information or factors (such as intent) in order to determine how to interpret the Final Order and Settlement Agreement. *See GeoVera Specialty Ins. Co. v. Graham Rogers, Inc.*, 636 F. 3d 445, 449 (8th Cir. 2011) ("We interpret the language contained in a contract using

3

the 'plain and ordinary meaning' of its words."). Indeed, as even Hurt concedes, "[a] settlement agreement is basically a contract and governed by contract principles." (Pl. Br. at 5 (quoting *Berardinelli v. Gen'l American Life Ins. Co.*, 57 Fed. R. Serv. 3d 844 (8th Cir. 2004)).)

Here, the terms of the Final Order approving the settlement are plain, clear, and unambiguous: Settlement Class members include individuals who "will own such real property or structures during the term of entitlement to relief under the Settlement Agreement." *Cox*, 1995 WL 775363, at *15. Hurt's argument that this provision encompasses only "homeowners whose entitlement to relief has vested by virtue of a qualifying leak" is contrary to the unambiguous terms of the Final Order and Settlement Agreement. Indeed, the Settlement Agreement expressly contemplated that someone may be a Settlement Class member but not an Eligible Claimant, as it details the various qualifying leak scenarios through which "[a] Settlement Class member may qualify as an Eligible Claimant." (Defs. Br. at Ex. 2, Settlement Agreement § 6.1.) In other words, an Eligible Claimant is necessarily a Settlement Class member. But, as in Hurt's case, the converse is not always true. And the Final Order released the claims of—and enjoined any future litigation by—any Settlement Class member who, like Hurt, did not opt out of the Settlement Agreement. *Cox*, 1995 WL 775363, at *15.

      **B.**    **Hurt Received Consideration Under the *Cox* Settlement.**

Hurt next argues that she received no consideration under the *Cox* Settlement. But Hurt conflates consideration with monetary compensation. Although Hurt may not have received monetary compensation under *Cox* because she says that her plumbing did not experience a leak during the extended relief period, she nevertheless received a benefit (consideration) under the settlement in the form of an extended warranty on her polybutylene plumbing system. That extended warranty covered any leaks between when she purchased her home in 2005 and the expiration of "the term of entitlement to relief under the Settlement" in 2009. *Cox*, 1995 WL

4

775363, at *15. The warranty was valuable indeed, and covered reimbursement of expenses for repairs to, and replacement of, leaking polybutylene plumbing systems as well as property damage caused by any such leaks. *Id.* at *5. The fact that her plumbing did not leak during this four–year period does not mean that she did not benefit from the coverage and protection offered during the relief period, just as any individual benefits from having an extended warranty regardless of whether a claim is ever made.

Hurt's argument misunderstands basic class action law: not all class members necessarily receive monetary compensation in a class settlement. This basic concept is consistent with well-established Eighth Circuit precedent. For example, in *In re General American Life*, the Eighth Circuit considered similar arguments by a plaintiff who, like Hurt, asserted that a class action settlement resulted in some plaintiffs receiving, "in the aggregate, a large amount of money, while plaintiff and others similarly situated received nothing." *In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 357 F.3d 800, 805 (8th Cir. 2004). The Eighth Circuit rejected this "no consideration" argument out of hand, concluding that while "[i]t is true that no separately stated consideration was paid for those claims . . . . [n]o part of the consideration on either side is keyed to any specific part of the consideration of the other. Each side gives up a number of things. This is the way settlements usually work." *Id.*[1]

Ultimately, Hurt's failure to opt out of the *Cox* settlement reflects her decision that the protections of a four–year extended warranty under the *Cox* settlement were more valuable than

---

[1] *See also, e.g., Thompson v. Edward D. Jones & Co.*, 992 F.2d 187, 192 (8th Cir. 1993) (affirming injunction where a plaintiff "had the opportunity to opt out of the class action in the Arkansas action in order to preserve any individual claims she may have had in addition to those common with the class"); *Dennington v. State Farm Fire*, 2016 WL 1021003 at *4 (W.D. Ark. Mar. 14, 2016) ([Defendant] is entitled to the sense of peace and finality they sought by entering into the settlement agreement.").

pursuing recourse against defendants on her own.[2]  Having not opted out, she must abide by the consequences, including the release and injunction barring her current claims.

        **C.**      ***Cox* Satisfies Due Process and Should be Extended Full Faith and Credit.**

Hurt's remaining argument against extending full faith and credit to *Cox* and enforcing its release against her claims is her contention that her rights were not adequately represented in the *Cox* settlement.  Yet in support she offers only unfounded assertions that the interests of the class representatives in *Cox* were adverse to hers, and that the *Cox* class counsel were improperly motivated by their attorney's fees.

With respect to the adequacy of class representation in *Cox*, Hurt incorrectly claims that there was only one class representative in *Cox*.  In fact, there were six.  *See Cox*, 1995 WL 775363 (listing in the caption as class representatives Tina Cox, Charles Homer Cloar, Mary H. Cloar, Melody Alford, Country Village Home Park, and Phyllis Birmingham).  Nothing in the Final Order indicates which of the named representatives had experienced leaks in their polybutylene plumbing system at the time of the Final Order and which had not.  But, as noted above, the *Cox* court expressly noted that a leak was not required for individual homeowners to become Settlement Class members.  *Id.* at *2.

Hurt incorrectly assumes that there was a conflict between the class representatives in *Cox* and absent class members such as herself simply because some class members had experienced leaks at the time of the settlement and others had not.  Hurt relies on *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), but unlike the settlement at issue in *Amchem*, the *Cox* settlement

---

[2]  *See Marshall v. Nat'l Football League*, 787 F.3d 502, 520 (8th Cir. 2015) ("There is a well-established remedy that any class member may elect to preserve what he believes to be a claim worth more than what he may receive under the settlement—opt out.")

fund was uncapped, providing an initial funding commitment of $950 million to fund consumer payments and plumbing repairs. *Cox*, 1995 WL 775363, at *5. The *Cox* settlement fund grew from $950 million in 1995 to $1.103 billion by 2008, which included ongoing contributions from defendants of an additional $153 million to fund consumer payments and plumbing repairs. (Defs. Br. at Ex. 4, 2008 Notice.) Hurt's suggestion that an uncapped settlement that eventually totaled more than $1.1 billion was the result of an unfair conflict or a decision by class counsel to put their fees ahead of maximizing recovery to the class rings hollow.

To the extent that there was any "conflict" at all between the class representatives and class members such as Hurt, such "conflicts" are "far from the extraordinary various injuries that sharply divided the interests of present and future asbestos claim holders in attempting to allocate the limited funds available in *Amchem* and *Ortiz*." *Pro. Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 647 (8th Cir. 2012) (internal citations omitted). Rather, the relationship between the class representatives in *Cox* and Hurt is akin to that between the active employees and retirees in *Zalewski*, where the Eighth Circuit found that "as prospective retirees, the active employees shared an interest in protecting retiree rights." *Id.* Here, the class representatives who had experienced a qualifying leak and absent class members who could potentially experience one in the future were aligned, and the *Cox* Settlement was structured to insure that sufficient and uncapped funding would be available to cover any such qualifying leaks during the term of entitlement to relief under the Settlement Agreement.

Hurt's remaining due process argument, that class counsel's interest in fees "sapped class counsel of the incentive to zealously represent future claimants like [Hurt]," is spurious. (Pl. Br. at 9.) As the *Cox* court recognized, "[i]t is an important aspect of the Settlement that the plaintiffs' attorney's fees and costs are paid by the defendants in addition to the settlement fund, and are not

7

deducted from the settlement fund." *Cox*, 1995 WL 775363, at *3. Accordingly, Hurt's reliance on *In re Payment Card* is misplaced. *See In re Payment Card Interchange Fee & Merch. Discount Antitrust Litig.*, 827 F.3d 223, 233 (2d Cir. 2016) (finding, unlike here, a conflict where a settlement agreement treated members of Rule 23(b)(2) and (b)(3) classes disparately and did not afford opt-out rights to the (b)(2) class members).[3]

Finally, Hurt argues that this Court should conduct "a thorough substantive due process review" of the *Cox* Settlement, citing authority from outside the Eighth Circuit. (Pl. Br. at 10.)[4] Such a review is unnecessary, defendants submit, in light of Eighth Circuit precedent holding no due process violation in similar cases where plaintiffs "received notice of the settlement, and did not exercise [their] opportunity to opt out." *In re Gen. Am. Life Ins. Co.*, 357 F.3d at 805; *Thompson*, 992 F.2d 187 (same). The Court should reject Hurt's arguments to the contrary, extend full faith and credit to *Cox*, and dismiss Hurt's claims with prejudice.

## II.   EACH OF HURT'S CAUSES OF ACTION FAILS TO STATE A CLAIM.

Even if Hurt's claims were not barred by the *Cox* release and injunction—which they are—each of her individual causes of action fails to state a claim and should be dismissed.

---

[3] Hurt's suggestion that the *Nobl Park* decision to **extend** full faith and credit to *Cox* supports her argument against extending full faith and credit here is unavailing. *See Nobl Park, L.L.C. of Vancouver v. Shell Oil Co.*, 95 P.3d 1265, 1270 (Wash. App. 2004) (concluding "no such concerns" regarding future recovery, such as an expired settlement or depleted funds). This is particularly the case where Hurt received notice of Settlement in 2005 and elected not to opt out.

[4] In any event, these cases do not support Hurt's position. *See Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012) (concluding that because plaintiff opted out of settlement that was otherwise entitled to full faith and credit, "it is impossible for the []settlement to affect [plaintiff's] rights or claims"); *Hege v. Aegon USA, LLC*, 780 F. Supp. 2d 416, 429 (D.S.C. 2011) (declining to extend full faith and credit where notice was "materially misleading").

8

### A.     Hurt's ADTPA Claim Should Be Dismissed.

Hurt does not contest, and thus concedes, that her claim under the Arkansas Deceptive Trade Practices Act should be dismissed as a matter of law.  (*See* Def. Br. at 20-21 (citing authorities).)  Accordingly, the Court should dismiss Hurt's ADTPA claim without leave to amend.

### B.     Hurt's Polybutylene Plumbing Is Not Unreasonably Dangerous.

The Arkansas Supreme Court defines "unreasonably dangerous" in the strict liability context as "something *beyond* that contemplated by the ordinary and reasonable buyer." *Berkeley Pump Co. v. Reed-Joseph Land Co.*, 279 Ark. 384, 394, 653 S.W.2d 128, 132 (1983).  In arguing that her polybutylene plumbing is "unreasonably dangerous" (Pl. Br. at 13), Hurt ignores the contrary Eighth Circuit precedent interpreting *Berkeley Pump* in the same context at issue here: a leaking home plumbing system.  *See Apex Oil Co. v. Jones Stephens Co.*, 881 F.3d 658, 661 (8th Cir. 2018) ("[W]e conclude that Apex failed to present sufficient evidence that the danger of water escaping from the toilet supply line was beyond the contemplation of an ordinary and reasonable consumer.").  In *Apex Oil*, the Eighth Circuit concluded that a leaking home plumbing system was not unreasonably dangerous because "an ordinary and reasonable consumer would anticipate the risk that water might escape at some point from a home plumbing system that relies on plastic connections, especially after the product has aged several years." *Id.*

In light of *Apex Oil*'s holding, which applied Arkansas law, Hurt's claim that her polybutylene plumbing is unreasonably dangerous is "fatally flawed in [its] legal premises and designed to fail" and should thus be dismissed.  *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (holding that the purpose of a Rule 12(b)(6) motion is to eliminate such actions, "thereby sparing litigants the burden of unnecessary pretrial and trial activity").[5]

---

[5] Hurt's cited authorities are inapposite.  *Farm Bureau Ins. Co. v. Case Corp.*, 317 Ark. 467, 878 S.W.2d 741 (1994), dealt with a tractor that suddenly caught on fire.  That is a far cry from a case

9

Rather than address *Apex Oil*, Hurt tries to bolster her complaint with additional, unalleged facts, asserting that her claim "does not allege a case of common plumbing leaks," but rather involves "a case of systemic and widespread failures of the pipes and the fittings." (Pl. Br. at 13–14 (describing "massive leaks," "extensive flooding," *etc.*).) In fact, Hurt's complaint alleges no such thing. Instead, her complaint alleges that her home, "which she purchased in 2005, contains a defective water delivery system manufactured by Defendants," and that "Ms. Hurt was unaware of Defendants' misrepresentations until February 2017, when a portion of her home failed, causing substantial water damage." (Compl. ¶ 11.)

The Court should disregard the newly alleged, unpled facts in Hurt's opposition brief. *See Morgan Distributing Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("However, it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'") (internal citations omitted). And even if Hurt had pled such alleged facts, her strict liability claims cannot be saved by allegations of property damage as a result of the alleged leak as Arkansas courts have consistently held the products were not unreasonably dangerous even though they caused property damage. *See, e.g.*, *Berkeley Pump*, 279 Ark. at 393-95, 653 S.W.2d at 133; *O'Mara v. Dykema*, 328 Ark. 310, 316-317, 942 S.W.2d 854, 858 (1997).

C. **Hurt's Strict Liability and Negligence Claims Do Not Adequately Plead Proximate Cause.**

As defendants' opening brief explains, Hurt's complaint is defective because it makes no attempt to "negate the other possible causes of failure of the product for which the defendant would not be responsible in order to raise a reasonable inference that the dangerous condition existed

---

regarding plumbing leaks, where the Eighth Circuit has recognized that "[t]ypical consumers are aware that they must monitor their plumbing systems for water leakage," . . . . "[e]ven where a manufacturer purports to deliver a 'leak proof seal.'" *Apex Oil*, 881 F.3d at 661. Similarly, Hurt cites irrelevant cases interpreting the strict liability requirements of the laws of other states.

while the product was still in the control of the defendant." *White v. Volkswagen Gr. of Am., Inc.*, 2013 WL 685298, at *5-6 (W.D. Ark. Feb. 25, 2013) (citing *Campbell Soup Co. v. Gates*, 319 Ark. 54, 59 (1994)); Ark. Code Ann. § 4–86–102 (2018) (to recover for strict liability, plaintiff must show that "the defective condition was the proximate cause of harm to person or property").

Hurt also fails to allege any facts regarding either the use, maintenance, repairs, or modifications to the plumbing system in her home either before she bought it or after. *See Perez v. Volkswagen Gr. of Am., Inc.*, 2013 WL 1661434, at *7 (W.D. Ark. Apr. 17, 2013) (dismissing complaint where plaintiff "does not attempt to trace the chain of custody and ownership of [the allegedly defective product] back to Defendant"); *White*, 2013 WL 685298, at *6 (same).

Hurt nevertheless contends that she has sufficiently pled proximate cause in her strict liability and negligence claims because she alleges that the purported "defective condition" of the polybutylene plumbing is "the proximate cause of the harm to Ms. Hurt's property." (Pl. Br. at 11-12.) But the Supreme Court has made clear that for a complaint to survive a Rule 12(b)(6) motion "requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Hurt's opposition amounts to nothing more than a "because I said so" argument, relying on the principle that a complaint's factual allegations must be accepted as true. As the Eighth Circuit recognized in *Apex Oil*, however, experience teaches that leaks in plumbing systems are common and to be anticipated in "a home plumbing system that relies on plastic connections, especially after the product has aged several years." *Apex Oil*, 881 F.3d at 661.[6] Accordingly,

---

[6] Because the risk of leaks in home plumbing systems is expected by the typical consumer, Hurt's reliance on *Dancy v. Hyster Co.* is misplaced. 127 F.3d 649, 654 (8th Cir. 1997) ("[P]roof of a specific defect is not required when common experience teaches the accident would not have

11

even drawing all inferences in her favor, at best Hurt's "complaint pleads facts that are 'merely consistent with' a defendant's liability," which "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Finally, Hurt argues that dismissal is premature where there has been no discovery, but Hurt has the argument backward, as it is well-established that a party is not entitled to discovery where her complaint fails to state a claim under Rule 12.  *See Iqbal*, 556 U.S. at 678 (holding that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").  And, in any event, the missing and defective allegations in Hurt's complaint relate to her own home, so there is no basis for Hurt to contend that she needs discovery in order to sufficiently plead proximate cause to support her strict liability and negligence claims.

### III. THE NON-ARKANSAS RESIDENTS' CLAIMS SHOULD BE DISMISSED UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2).

Defendants' opening brief acknowledged the split in authority regarding the applicability of *Bristol-Myers* to class actions and explains why the better argument is that the personal jurisdiction requirements of *Bristol-Myers* should apply and the claims brought on behalf of non-Arkansas resident unnamed class members should be dismissed.  (Defs. Br. at 26-29.)  In response, Hurt argues (1) that the nonresident putative class members are not parties, so any determination of personal jurisdiction over their claims is premature; and (2) that "a Rule 12(b)(2) motion is not the proper vehicle for 'dismissing' a tentatively proposed class," and as such the motion should be construed as a motion to strike under Rule 12(f).  (Pl. Br. at 22.)

---

occurred in the absence of a defect.") (quoting *Higgins v. Gen. Motors Corp.*, 287 Ark. 390, 392, 699 S.W.2d 741, 743 (1986)).  In any event, the courts in *Dancy* and *Higgins* upheld judgments and/or verdicts in favor of defendants where plaintiffs "'failed to adequately negate any cause of the accident due to [other causes, such as] driver error or control.'"  *Dancy*, 127 F.3d at 654 (internal citations omitted).

12

As an initial matter, Hurt's assertion that the Court should analyze defendants' *Bristol-Myers* argument under Rule 12(f) has no merit.  Hurt ignores the fact that even the courts declining to apply *Bristol-Myers* to class actions did so in connection with motions to dismiss under Rule 12(b)(2), not Rule 12(f) motions to strike.[7]  Hurt's reliance on Rule 12(f) cases is thus misplaced.[8]

It is Hurt who bears the burden of establishing a prima facie case that there is personal jurisdiction over defendants.  *See Fastpath, Inc. v. Arbela Technologies Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) ("When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists.").  She has not met her burden with respect to the non-Arkansas putative class members.  Nor can she, where, to paraphrase *Bristol-Myers*, the nonresident putative class members do not own property in Arkansas, were not sold polybutylene plumbing in Arkansas, have not suffered property damage in Arkansas, and are not able individually to sue defendants in Arkansas.  Consequently, Hurt's multi-state class allegations on behalf of non-Arkansas resident plaintiffs should be dismissed under Rule 12(b)(2).

Moreover, there is no reason to delay this jurisdictional determination (no facts are in dispute) and numerous reasons to resolve the issue now, before burdensome multi-state class discovery commences.  Such discovery would seriously dilute the due process protections that an early determination of jurisdiction provides to defendants sued in jurisdictions where the unnamed

---

[7] *See, e.g.*, *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2017 WL 5971622, at *1. (E.D. La. Nov. 30, 2017) ("Pending before the Court the Court is Defendants CNBM and BNBM's motion to dismiss for lack of personal jurisdiction."); *Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*, 2017 WL 4224723, at *3 (N.D. Cal. Sep. 22, 2017) ("Dr. Pepper moves to dismiss the complaint on the ground that the Court lacks personal jurisdiction over it, or at least over Dr. Pepper as to the non-California class members."); *Day v. Air Methods Corp.*, 2017 WL 4781863, at *1 (E.D. Ky. Oct. 23, 2017) ("This matter is pending for consideration of the defendants' motion to dismiss the plaintiffs' Complaint pursuant to Rules 12(b)(2), and (6).").

[8] Indeed, each of the cases cited by defendants where courts applied *Bristol-Myers* in dismissing the claims of nonresident absent class members was decided in connection with a motion to dismiss for personal jurisdiction.  (*See, e.g.,* Defs. Br. at 27 n.11 (citing cases).)

class members could not lawfully have sued them.  Indeed, resolution of this issue now will prevent defendants from being forced to litigate claims in this Court that are unrelated to Arkansas.

Furthermore, Hurt's contention that *Bristol-Myers* does not reach unnamed class plaintiffs because they are not parties is flawed.  For example, even Hurt's cited authority concedes that putative class members *could be* considered parties for purposes of the *Bristol-Myers* analysis.  *See Fitzhenry*, 2017 WL 4224723, at *5 ("Perhaps this may be one of those contexts in which an unnamed class member should be considered as parties given the language the Supreme Court chose to use in *Bristol-Myers*.") (discussing *Devlin v. Scardelletti,* 536 U.S. 1, 9–14 (2002) (unnamed class members "may be parties for some purposes and not for others")).

Additionally, Hurt argues that the "procedural checks on representative actions" in Rule 23 were "specifically designed to safeguard defendants' due process rights and will continue to do so here" (Pl. Br. at 19), but Rule 23 cannot abridge due process rights by bootstrapping class action claims beyond constitutional scrutiny.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) ("[T]he Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'" (citation omitted)).  Indeed, defendants should enjoy as much due process protection in relation to a claim brought on behalf of a nonresident putative class member as they would in relation to a claim brought in the same court by a nonresident in a mass action.[9]  As another court recently explained in determining that *Bristol-Myers* prevented it from exercising jurisdiction over the claims of nonresident absent class members, "[t]he Supreme Court has emphasized that Rule 23's requirements must be interpreted in keeping with Article III constraints,

---

[9] *See, e.g.*, Defs. Br. at 27 n.11 (citing cases); *Anderson v. Logitech, Inc.*, 2018 WL 1184729, at *1 (N.D. Ill. Mar. 7, 2018) ("[A] nationwide class action is not significantly different from a mass tort suit involving a multitude of individual claims."); *DeBernardis v. NBTY, Inc.*, 2018 WL 461228, at *2 (Jan. 18, 2018) (dismissing the claims on behalf of out-of-state plaintiff classes).

and with the Rules Enabling Act… Under the Rules Enabling Act, a defendant's due process interest should be the same in the class context." *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 2018 WL 1255021, at *16 (N.D. Ill. Mar. 12, 2018) (internal citations omitted).

Finally, Hurt relies on *Chinese Drywall* to argue that the federalism concerns underlying *Bristol-Myers* are not implicated by a nationwide class action in federal court. To the contrary, federal courts sitting in diversity and dealing with state law claims routinely apply the Fourteenth Amendment's specific jurisdiction analysis.[10] And, as explained in the *Fitzhenry* case relied on by Hurt, the concern that a defendant will be forced to submit "to the coercive power of state with little legitimate interest in the claims in question" does not evaporate when a matter pending in federal court pursuant to diversity jurisdiction applies state law and procedures.[11] Despite Hurt's contention to the contrary, "forum shopping is just as present in multi-state class actions" as it is in mass tort actions.[12]

For all of these reasons, and as further explained in the line of cases that have applied *Bristol-Myers* in the class action context, the Court should dismiss the claims of non-Arkansas plaintiffs for lack of personal jurisdiction.

## CONCLUSION

Hurt's complaint is an improper attempt to circumvent the *Cox* release and injunction, which ended more than a decade of litigation over the "same defect" alleged by Hurt. Alternatively, Hurt's complaint should be dismissed because her individual causes of action fail

---

[10] *See, e.g., McDonnell v. Nature's Way Prod., LLC*, 2017 WL 4864910, at *4, n. 7 (N.D. Ill. Oct. 26, 2017) ("Because the court is exercising diversity jurisdiction and looking to Illinois law, however, *Bristol-Myers Squibb Co.* applies here.").

[11] *Fitzhenry*, 2017 WL 4224723, at *4.

[12] *DeBernardis*, 2018 WL 461228, at *2.

to state a claim.  These fundamental flaws cannot be cured by an amended pleading.  In any event, the claims on behalf of the non-Arkansas residents should be dismissed for lack of jurisdiction.

Wherefore, for the foregoing reasons, as well as those explained in defendants' opening memorandum of law, Hurt's complaint should be dismissed in its entirety under Rules 12(b)(6) and 12(b)(2), and dismissal with prejudice is warranted.

| | |
|---|---|
| QUATTLEBAUM, GROOMS & TULL PLLC<br>111 Center Street, Suite 1900<br>Little Rock, AR 72201<br>Telephone: (501) 379-1700<br>Facsimile: (501) 379-1701<br><br>By: /s/ Chad W. Pekron<br>    Chad W. Pekron (2008144)<br>    R. Ryan Younger (2008169)<br>    Sarah E. DeLoach (2015235)<br><br>Richard C. Godfrey, P.C. (pro hac vice)<br>Andrew R. McGaan, P.C. (pro hac vice)<br>Scott W. Fowkes, P.C. (pro hac vice)<br>R. Allan Pixton (pro hac vice)<br>Jenna M. Stupar (pro hac vice)<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, IL  60654<br>Telephone: (312) 862-2000<br>Facsimile: (312) 862-2200<br><br>*Attorneys for Celanese Corporation* | ROSE LAW FIRM<br>120 East Fourth Street<br>Little Rock, AR 72201<br>Telephone: (501) 375-9131<br>Facsimile: (501) 375-1309<br><br>By: /s/ Rick Donovan<br>    Rick Donovan (83054)<br>    Amanda Wofford (2005023)<br>    David S. Mitchell, Jr. (2010271)<br><br>Jack W. Massey (pro hac vice)<br>Thomas M. Byrne (pro hac vice)<br>Gail L. Westover (pro hac vice)<br>EVERSHEDS SUTHERLAND (US) LLP<br>1001 Fannin Street, Suite 3700<br>Houston, TX 77002<br>Telephone: (713) 470-6100<br>Facsimile: (713) 654-1301<br><br>*Attorneys for Shell Oil Company* |

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of March 2018, I filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.

/s/ Chad W. Pekron
Chad W. Pekron