```
 1                IN THE UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF ARKANSAS
 2                         JONESBORO DIVISION

 3

     JOY HURT, on behalf of
 4   herself and all others                No. 3:17CV00315-DPM
     similarly situated,
 5
                     Plaintiff,
 6
     v.                                    Friday, July 6, 2018
 7                                         Jonesboro, Arkansas
                                           1:07 p.m.
 8   SHELL OIL COMPANY and
     CELANESE CORPORATION,
 9                   Defendants.

10
                     EXCERPTED TRANSCRIPT OF HEARING
11              BEFORE THE HONORABLE D.P. MARSHALL JR.,
                      UNITED STATES DISTRICT JUDGE
12

13   APPEARANCES:

14   On Behalf of the Plaintiff:

15       MR. JAY L.T. BREAKSTONE, Attorney at Law
            Parker Waichman
16          6 Harbor Park Drive
            Port Washington, New York  11050
17
         MR. DANIEL CALVERT, Attorney at Law
18       MR. JAY P. DINAN, Attorney at Law
            Parker Waichman
19          27300 Riverview Center Boulevard, Suite 103
            Bonita Springs, Florida  34134
20

21

22

23

24

25                                              [Continued]
```

Elaine Hinson, RMR, CRR, CCR
United States Court Reporter

[APPEARANCES CONTINUING]

On Behalf of Defendant Shell:

    MR. JACK MASSEY, Attorney at Law
      Eversheds Sutherland (US)
      1001 Fannin, Suite 3700
      Houston, Texas 77002

    MR. DAVID S. MITCHELL JR., Attorney at Law
      Rose Law Firm
      120 East Fourth Street
      Little Rock, Arkansas 72201-2893

On Behalf of Defendant Celanese:

    MR. RICHARD C. GODFREY, Attorney at Law
    MR. R. ALLEN PIXTON, Attorney at Law
      Kirkland & Ellis
      300 North LaSalle Street
      Chicago, Illinois 60654

    MR. CHAD W. PEKRON, Attorney at Law
      Quattlebaum, Grooms & Tull
      111 Center Street, Suite 1900
      Little Rock, Arkansas 72201-3325

    Proceedings reported by machine stenography; transcript prepared utilizing computer-aided transcription.

1      [Excerpted as follows:]

2      (Recess from 2:12 p.m. until 2:35 p.m.)

3           THE COURT:  Counsel, I appreciate your patience with
4  me, giving me time for my mind to come to rest.  Your briefs
5  were good in helping me prepare for the hearing today, but your
6  oral arguments were even better.  I think Justice Jackson liked
7  to say that he always gave three oral arguments:  The one he
8  planned and the one he made and then the one he made on the way
9  home.  That was certainly my experience as a lawyer.  But each
10 one of you has made the argument that you would make on the way
11 home.  It is extraordinarily helpful to the Court to have this
12 conversation.

13      The defendants' motion to dismiss is granted.  And I'll do
14 my best to explain my reasoning and then enter a short order
15 saying "for the reasons stated on the record."

16      It's not disputed that Ms. Hurt was in this settlement
17 class, the third group of those who owned property during the
18 settlement period and might have a leak.  As the plaintiffs
19 argue, there are some shadows between the preliminary order and
20 the final order.  But I'm persuaded that the defendants are
21 right, that there are no shadows or gaps between the settlement
22 agreement itself and the final order.  And, in any event, the
23 final order says to the extent the changes have been made, this
24 is the deal.

25      I understand, Mr. Breakstone, that this is not the deal

1  that you believe should have been made on behalf of the folks
2  potentially affected by these bad pipes.  But it was a pretty
3  good deal.  It was, in the Court's view, prospective from the
4  beginning; that is, the agreement is reached in '95, and it
5  looked out into the future of across those homeowners or those
6  who would become owners of property containing these pipes and
7  that had leaks during that future time until 2009.  Likewise,
8  the agreement looked back and took care of folks who had had
9  leaks in the recent years.
10       I agree with you, Mr. Godfrey, in terms of the due process
11  analysis, that it's mostly, though not exclusively, but mostly a
12  matter of the procedure and that all of the procedural matters
13  here were not only adequately done but more than adequately
14  done.  There was multiple rounds of notice, and the notice in my
15  judgment was clear and fair alerting consumers that they could
16  either stay in this group and get the benefit of the settlement,
17  which, as the defendants say, was in the nature of a warranty or
18  insurance policy against leaks for a fixed period; or,
19  alternatively, step out, opt out of the settlement.
20       The many sets of lawyers' eyes in the courtroom have seen
21  many notices over time, I am sure.  And this one, its words are
22  plain.  There's nothing garbled about it.  Likewise, it's
23  important to the Court that the notice was seriatim.  It wasn't
24  once and done.  And given the undisputed facts about Ms. Hurt's
25  ownership with her purchase of the property in February of 2005,

1  she had the benefit of the fall 2005 notice as well as the 2008
2  notice.
3      I will take a detour here, Mr. Breakstone, to address a
4  point that you made. I can't make the law over, and the law
5  doesn't require notice in Ms. Hurt's hands. It requires, in
6  Rule 23's words, the best practicable notice in the
7  circumstances. And given the notice in multiple publications
8  and on the radio and suppliers and whatnot, this notice was
9  adequate. There was the right to opt out. Ms. Hurt did not opt
10 out.
11     In terms of adequacy of representation, as the Tennessee
12 court found, we have a group of plaintiffs' representatives
13 here. It seems to me that this goes back to the merits of the
14 settlement to the extent that's open for me to look at. You've
15 got a bargain here that returns substantial benefits to those
16 who are affected by this pipe, more than a billion dollars.
17 It's undisputed. That's a lot of money in anyone's counting.
18     I don't see in this record the kind of structural defect or
19 structural conflict, Mr. Breakstone, that you identified,
20 arguing from the credit card case from Judge Leval's opinion
21 there.
22     Rather, this truly was, it seems to me, a question of where
23 to draw the line. If you are going to draw the line for
24 prospective -- for folks who might have a leak at some point, a
25 line has to be -- it has to be at some year unless it's forever,

that we're going to pay for all of the pipes.  Short of a product where it was undisputed that it was going to fail, that failure was almost a certainty, in something like -- I don't know -- 99 percent of the cases, it seems to me that it's -- Mr. Godfrey, as you and I discussed, it's a matter of bargaining at arm's length between the interested parties as to where to draw that line.

The Tennessee court was quite thorough in evaluating the fairness of the settlement.  And if we move beyond the procedural aspects of due process breathed beyond the notice and the opt-out possibility, the adequacy of representation, and get more deeply into some kind of substantive look at this deal, it's a pretty good deal.

I don't believe that the Court needs to go beyond that to a ruling on the preclusion issues or a ruling on the adequacy of the pleadings, on the state law issues, or to the interesting issues about what *Bristol-Myers* may or may not mean.  That last is especially a point for another day.

As the defendants argued, the settlement and the resulting -- the judgment, the Tennessee court's judgment arising from the settlement, the release and the injunction against future claims, that judgment is entitled to full faith and credit under the statute cited by the defendants.  And it precludes Ms. Hurt, a member of the Cox class, who did not opt out, whose leak post-dated the sunset of the settlement, it

1 precludes Ms. Cox from going forward now here either on her own
2 behalf or as a representative of others who may have been harmed
3 by the pipe beyond the settlement's sunset date.
4     The Court has, of course, relied upon the authorities that
5 the parties cited. And there are many of them. The *Shutts* case
6 is particularly important. Although the analysis is in terms of
7 res judicata rather than the full faith and credit clause, the
8 Eighth Circuit's opinion in *In Re: General American Life*
9 *Insurance Company*, an opinion written by Judge Richard Arnold
10 and joined by Judge Morris Arnold -- so you can't do better than
11 that -- in the Eighth Circuit was important to me on the due
12 process points.
13     Mr. Godfrey, I guess I have one foot in the barn with you
14 on *Nobl Park* and *Hospitality Corp.* I rely on them primarily as
15 persuasive authority in evaluating the procedural adequacy of
16 the settlement, the due process issues, as opposed to addressing
17 the underlying substantive issues, because of the timing of
18 those earlier "what does the *Cox* settlement and judgment mean"
19 cases. They did not have to engage with a situation like Ms.
20 Hurt's, where you have a member of the class who did not opt
21 out, had the benefit of protection and the possibility of
22 repairs being paid for for some several years and then, it's
23 true, for purposes of this motion to dismiss, sustained injury
24 because of the defective pipe at some later date.
25     All right. Mr. Breakstone, you've come up on the short end

1  of the stick.  And I want to be sure that your record is
2  complete for purposes of an appeal.  I have a word to say about
3  this, but it's by no means the last word, of course.  Is there
4  any point that you would like me to address that I have not
5  addressed?
6           MR. BREAKSTONE:  No, Your Honor.  We only ask that if
7  this is going to be the only decision, as opposed to a written
8  decision, that you indicate that the other arguments raised were
9  considered and decided against me so that there's no question
10 that there's some argument that Your Honor didn't consider.
11          THE COURT:  Are we talking about the state law issues
12 and the *Bristol-Myers* issues?
13          MR. BREAKSTONE:  Yes.  I might add, Your Honor --
14 because I see what is a pained look on Your Honor's face.
15          THE COURT:  Yes.  You see correctly.
16          MR. BREAKSTONE:  I think, for purposes of, for lack of
17 a better term, finality, as far as this Court is concerned, you
18 might indicate that since your decision was based on full faith
19 and credit it wasn't necessary to decide those issues.
20          THE COURT:  Certainly that is my intention.  So it's
21 unnecessary for me to reach those other issues, and I'm not
22 doing so.  Good.  Thank you, Mr. Breakstone, for that help.
23       Mr. Massey, anything else you want me to say or address?
24          MR. MASSEY:  No, Your Honor.
25          THE COURT:  Mr. Godfrey, same question.

1      MR. GODFREY:  No, Your Honor.  Again, thank you very
2 much for the privilege of appearing here and for your time.
3      THE COURT:  You are welcome.  I don't know about you,
4 counsel.  But the best days for me are the days in court with
5 good lawyers.  And y'all have made this one of my best days.
6 Traveling mercies on the way home.
7    We are in recess.
8    (Proceedings concluded at 2:51 p.m.)
9             REPORTER'S CERTIFICATE
10   I certify that the foregoing is a correct transcript from
the record of proceedings in the above-entitled matter.
11
12 /s/Elaine Hinson, RMR, CRR, CCR      Date:  July 10, 2018
United States Court Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25